**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
Email: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com

Attorneys for NANG CHAN, on behalf of himself, all others similarly situated, and on behalf of the general public.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| NANG CHAN, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>ULTA INC., a Delaware corporation<br><br>Defendant | **Case No.: 2:23-cv-00650-AB-PLA**<br>Honorable Andre Birotte Jr, CR 7B<br><br>**CLASS ACTION**<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e)**<br><br>*Filed concurrently with Declarations of Marcus J. Bradley, Plaintiff Nang Chan and Lisa Pavlik; and [Proposed] Order.*<br><br>Date: November 8, 2024<br>Time: 10:00 a.m.<br>CR: 7B<br><br>Action Filed: January 27, 2023<br>Trial Date: None Set |

i

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiff Nang Chan ("Plaintiff"), by and through his counsel of record, will move this Court on November 8, 2024, at 10:00 a.m. in Courtroom 7B, of the above-entitled court located on the 50 W. 1st Street, Los Angeles, California 90012, for an Order:

1) Granting final approval of the proposed Settlement;
2) Granting approval of the claims administration payment of $16,000.00 to Simpluris Inc., from the Settlement Fund for the administration of the settlement;
3) Granting approval of the attorneys' fees in the amount of $100,000.00;
4) Granting approval of the attorneys' costs in the amount of $11,481.85;
5) Awarding Class Representative Service Payment of $5,000.00 to the Plaintiff for his service on behalf of the Settlement Class and for agreeing to a broader release than that required of Class Members;
6) Granting final approval of the payment of $15,000.00 as penalties under the California Labor Code Private Attorney General Act (Labor Code §§ 2699, *et seq*. ("PAGA"), from which $11,250.00 is to be paid to the California Labor and Workforce Development Agency ("LWDA");
7) Entering final judgment in this action in the form of the Order and Final Judgment submitted herewith; and
8) Retaining continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

This motion will be based on this notice, upon the attached memorandum of points and authorities filed contemporaneously herewith, upon the attached Declaration of Marcus J. Bradley, the Declarations of Plaintiff, Nang Chan, the Declaration of Simpluris Operations Manager, Lisa Pavlik, as well as upon the pleadings, documents, memoranda, and other records on file with the Court in this matter, and upon such other and further oral and/or documentary evidence as may be properly presented at the

hearing on this matter.

DATED: October 11, 2024

BRADLEY/GROMBACHER, LLP

By: *Marcus Bradley*
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.

Attorneys for Plaintiff

iii

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF SETTLEMENT ................................................................... 2

III. SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO ......... 3

    A.  Dissemination of Class Notices ................................................................ 3

        1.  No Objections or Requests for Exclusion Have Been Received ....... 3

IV. DISCUSSION ................................................................................................. 4

    A.  The Settlement Meets the Standards Governing Final Approval ............. 4

        1.  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here ................................. 5

        2.  The Settlement Is Fair ........................................................................ 6

        3.  Sufficient Discovery and Investigation Has Occurred ...................... 9

        4.  Class Counsel Are Experienced .......................................................... 9

        5.  The Class Members' Response to The Settlement Is Further Evidence That the Settlement Is Fair and Reasonable .................... 10

    B.  The Court Should Approve of The Settlement Administration Fee ........ 10

V.  CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*aff'd*,
  440 F.2d 1079 (2d Cir. 1971)..................................................................................7

*Berkey Photo, Inc. v. Eastman Kodak Co.*
  603 F.2d 263 (2d Cir. 1979).....................................................................................7

*Class Plaintiffs v. Seattle*
  955 F.2d 1268 (9th Cir. 1992).................................................................................4

*Eisen v. Porsche Cars North America, Inc.*
  2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .........................................................8

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011(9th Cir. 1998)..............................................................................4, 6

*Holak*
  2014 U.S. Dist. LEXIS 139879..............................................................................7

*In re Bluetooth Headset Products Liability Litigation*
  654 F.3d 935 (9th Cir. 2011)...................................................................................5

*In re Heritage Bond Litigation*
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ..................................4

*In re Surebeam Corp. Secs. Litig.*
  2004 WL 5159061 (S.D. Cal. 2004) ......................................................................9

*Joel A. v. Giuliani*
  218 F.3d 132 (2d Cir. 2000)....................................................................................4

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998).............................................................................6, 9

*Mandujano v. Basic Vegetable Products, Inc.*
  541 F. 2d 832 (9th Cir. 1976)................................................................................10

*Marshall v. Holiday Magic, Inc.*
  550 F.2d 1173 (9th Cir. 1977)..................................................................................6

*Neary v. Regents of Univ. of Cal.*
   3 Cal. 4th 273 (1992)...............................................................................................7

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*
   688 F. 2d 615 (9th Cir. 1982)..................................................................................6

*Ogiamien v. Nordstrom, Inc.*
   2015 U.S. Dist. LEXIS 22128 (C.D. Cal. 2015)......................................................7

*Quinlan v. Macy's Corp. Servs., Inc.*
   2013 U.S. Dist. LEXIS 164724 (C.D. Cal. 2013)....................................................7

*Ridgeway*
   2014 U.S. Dist. LEXIS 126806................................................................................7

*Stiller v. Costco Wholesale Corp.*
   298 F.R.D. 611 (S.D. Cal. 2014).............................................................................7

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*
   2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ....................................9

*Trans World Airlines, Inc. v. Hughes*
   312 F. Supp. 478 (S.D.N.Y. 1970)..........................................................................7

*Van Ba Ma v. Covidien Holding, Inc.*
   2014 U.S. Dist. LEXIS 76359 (C.D. Cal. 2014).....................................................6

*W. Virginia v. Chas. Pfizer & Co.*
   314 F. Supp. 710 (S.D.N.Y. 1970)..........................................................................7

**Statutes**

Fed. R. Civ. P. 23.........................................................................................................4

Fed. R. Civ. P. 23(a)(4) ...............................................................................................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

Plaintiff Nang Chan (hereinafter referred to as "Plaintiff"), former employee of Defendant Ulta Inc., (hereinafter "Defendant" or "Ulta") (collectively referred to as the "Parties"), submits this Motion for Final Approval of the Class Action Settlement.

**I.    INTRODUCTION**

This motion seeks final approval of a non-reversionary $300,000.00 proposed wage and hour class action settlement by Plaintiff on behalf of himself and the Class consisting of all current and former non-exempt employees who currently work or formerly worked for Defendant in California at any time from January 27, 2019, through the Effective Date (the "Settlement Period").

On May 30, 2024, the Court preliminarily approved the settlement and ordered the dissemination of the notice of settlement to Class Members. The notice period ends on October 19, 2024[1]. In response to the notice of settlement, to date, no Class Member objected to the settlement or requested exclusion from the settlement. Plaintiff will be filing a supplemental declaration in Support of Motion for Final Approval no later than October 28, 2024. At that time, Plaintiff will provide the Court the final statistics regarding the number of Class Members who requested to be excluded from the settlement and whether any Class Members have objected to the settlement.

The estimated average settlement payment to each Class Member is $61.09 and the highest estimated payment is $234.88. *See* Declaration of Lisa Pavlik ("Pavlik Decl."), ¶ 16. The Class Members' response as of the filing of this motion supports the Court's finding that the settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement to be fair, reasonable, and adequate.

---

[1] The deadline for Class Members to submit a Request for Exclusion, Object to the Settlement or Dispute work weeks is October 19, 2024. Therefore, Plaintiff will submit a supplemental declaration from Ms. Pavlik after the conclusion of the Notice Period.

## II. SUMMARY OF SETTLEMENT

As described in the motion for Preliminary Approval and stated in the Settlement Agreement and Amendment thereto, Defendant shall pay $300,000.00 (referred to as the "Gross Settlement Amount" or "GSA") which includes: (1) settlement administration costs of $16,000.00 (*see* Pavlik Decl. ¶ 14); (2) Class Representative General Release Payments not to exceed $5,000 to the name Plaintiff; (3) attorneys' fees not to exceed $100,000.00 (33.3% of the GSA); (4) Estimated Maximum Employer Share of Taxes of $6,808.73; and (5) attorneys' costs of $11,481.85. All of these payments are subject to the Court's approval. Additionally, a payment of $11,250.00 will be made to the California Labor and Workforce Development Agency ("LWDA").

After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available for distribution to Participating Class Members. After subtracting the above amounts, the NSA available for individual settlement payments is approximately $145,709.42.

Each Participating Class Member will receive a proportionate share of the NSA that is equal to (i) the number of weeks he or she worked for Defendant in California, in an hourly, non-exempt position, based on the Class data provided by Defendant, divided by (ii) the total number of weeks worked by all Participating Class Members based on the same Class data, which is then multiplied by the Net Settlement Amount. One day worked in a given week will be credited as a work week for purposes of this calculation. Therefore, the value of each Class Member's Individual Settlement Share ties directly to the amount of weeks that he or she worked.

As will be discussed, the settlement has been a success, with no objections to the settlement submitted by Class Members and no requests for exclusion submitted to date. The Class response and settlement shares to class members further demonstrate the settlement being fair, reasonable and adequate.

///

///

## III.    SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

### A.    Dissemination of Class Notices

Preliminary Approval was granted on May 30, 2024. At that time Simpluris was appointed by the Court as the Settlement Administrator. Simpluris, has complied with the Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail.

On August 13, 2024, Defense Counsel provided Simpluris with a mailing list ("Class List") containing Class Members' names, most recent mailing address, Social Security Numbers, Class Workweeks, and PAGA Pay Periods for each Class Member. The Class List contained data for two thousand three hundred and eighty-five (2,385) Class Members. Pavlik Decl. ¶ 5.

On September 4, 2024, Class Notice was mailed in English and Spanish to two thousand three hundred and eighty-five (2,385) Class Members with addresses contained in the Class List via First Class mail or updated via the NCOA search. Pavlik Decl. ¶ 7.

A total of one hundred and seventy-five (175) Class Notices were returned to Simpluris. If a Class Member's Class Notice was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e., skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. Simpluris used the Class Member's name and previous address to locate a current address. Through the advanced address searches, Simpluris was able to locate one hundred and forty-two (142) updated addresses and Simpluris promptly mailed a Class Notice to those updated addresses. Ultimately, there were thirty-three (33) Class Notices that were undeliverable. Pavlik Decl. ¶ 6.

In addition, throughout the notice process Simpluris has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement.

#### 1. No Objections or Requests for Exclusion Have Been Received

The deadline for Class Members to submit a Request for Exclusion, Object to the

1 | Settlement or Dispute work weeks is October 19, 2024. Pavlik Decl.¶ 10. To date, no
2 | objections have been filed with the Court or submitted to Simpluris and no requests for
3 | exclusion from the settlement were received. Pavlik Decl. ¶¶ 11-13. All Class Members
4 | who do not submit a request for exclusion will receive a settlement payment.

## IV. DISCUSSION

### A. The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures and wage and hour policies. These efforts culminated in the Parties reaching an agreement to settle. The settlement

amount takes into consideration the risks with regard to the certifying Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### 1. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. This settlement was not driven by attorneys' fees, and Class Counsel is not receiving a disproportionate distribution of the settlement. The NSA is greater than 1.7 times larger than the fees requested by Class Counsel. Class Counsel is requesting $279,115.75 (33.3% of the GSA); the NSA is approximately $479,380.65. Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 33.3% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members. Further, 100% of the NSA will be paid out to Participating Class Members as there is no reversion to

Defendant. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

## 2. The Settlement Is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

The liability questions in this case touched on California's wage and hour laws, which touched on the ever-changing legal landscape.

Furthermore, while Defendant has agreed to request certification for settlement purposes only, if the Settlement is not approved, Defendant has indicated that it intends

to vigorously contest certification, which creates further risk for Class Members. *See, e.g., Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128, at *15; 165 Lab. Cas. (CCH) P36, 317 (C.D. Cal. February 24, 2015) (denying certification of bag check case); *Quinlan v. Macy's Corp. Servs., Inc.*, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. 2013) (same); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014) (granting motion for decertification of closing time claim); *Holak*, 2014 U.S. Dist. LEXIS 139879, at *21-22 (denying certification of direct wage statement claim); *Ridgeway*, 2014 U.S. Dist. LEXIS 126806, at *28-29 (granting summary judgment and denying certification of direct wage statement claim).

Although Plaintiff believes he had valid counter-arguments to the defenses, and was cautiously optimistic about his chances of prevailing at trial, this optimism was tempered by the recognition that the odds of a favorable verdict being reversed on appeal are not too remote to ignore. *W. Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).

Additionally, early resolutions save time and money that would otherwise go to litigation. Parties' resources, as well as the Court's, would be further taxed by continued litigation. And if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, such that there may have been less available for Class Members. Cost savings is one reason why California policy strongly favors early settlement. *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes

in the litigation continuum."). This concern also supports settlement.

Moreover, Plaintiff's PAGA claims are based on the same alleged unlawful conduct as their class claims. Therefore, PAGA penalties could only be awarded if the factfinder agreed with Plaintiff's theories of liability. Should the Court agree with any of Defendant's defenses to certification or on the merits, the potential exposure for PAGA would be reduced and any associated PAGA penalties would be extinguished, as penalties can only be awarded if the Court agrees with Plaintiff's underlying allegations. Further, these penalties would be duplicative of the recovery from the underlying violations. Therefore, Plaintiff recognizes and reasonably believes the Court would significantly reduce any PAGA penalties if Defendant was determined to be the employer and found liable for the underlying Labor Code violations.

Although Plaintiff remains confident in the strength of his claims and believes this case is suitable for certification on the claimed basis there are company-wide policies that Plaintiff contends violate California law and uniformly affect all non-exempt employees, Defendant's counter-arguments raise uncertainties with respect to both class certification and success on the merits. This settlement represents a well-crafted compromise of the divergent positions of the Parties that provides substantial benefits for the Class. Each side evaluated the strengths and weaknesses of their case and independently concluded that this settlement represents a responsible means of addressing Plaintiff's claims and Defendant's defenses.

Finally, employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. The alternative to a class settlement – i.e., individual litigation – would tax private and judicial resources over a period of years. As such, the settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the settlement. *Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS

123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-89.

In summary, although Plaintiff and his counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through trial. Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### 3. Sufficient Discovery and Investigation Has Occurred

Class Counsel conducted discovery that yielded information and documentation concerning the claims set forth in the litigation, such as Defendant's policies and procedures regarding the payment of wages, the provision of meal and rest breaks, timekeeping policies, including recording hours, issuance of wage statements, termination wages, as well as information regarding the number of putative class members and the mix of current versus former employees, the average number of hours worked, the wage rates in effect, and length of employment for the average putative class member.

Class Counsel retained an expert to analyze and review a sampling of class member data provided by Defendant. From this analysis, Class Counsel were able to analyze Defendant's liability in this action and prepare a realistic damage model.

### 4. Class Counsel Are Experienced

Class Counsel has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement requires "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Plaintiff's Counsel, Bradley/Grombacher LLP, meet this standard and have been appointed class counsel in numerous class actions. *See* Bradley Decl. ¶ 26-32;

///

### 5. The Class Members' Response to The Settlement Is Further Evidence That the Settlement Is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). To date, not a single Class Member has objected to the settlement or requested to be excluded from the settlement. Pavlik Decl. ¶¶ 10, 11. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### B. The Court Should Approve of The Settlement Administration Fee

The Parties agreed to hire Simpluris to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. Simpluiris was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Pavlik Decl. ¶ 3. Following the grant of final approval, Simpluris will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. Pavlik Decl. ¶ 3. Simpluris' fee of $16,000.00 for services rendered and to be rendered is fair and reasonable and should be granted. Pavlik Decl. ¶ 19.

### V. CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the settlement fair, reasonable, and adequate and grant this Final Approval Motion. Plaintiff further requests that the Court enter final judgment.

| | | |
|---|---|---|
| 1 | Dated: October 11, 2024 | **BRADLEY/GROMBACHER, LLP** |

By: _Marcus Bradley_
     Marcus J. Bradley, Esq.
     Kiley Lynn Grombacher, Esq.
     Attorneys for Nang Chan